IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
SCRANTON DIVISION

| | |
|---|---|
| BEAZLEY UNDERWRITING, LTD.,<br>22 Bishopsgate,<br>London EC2N 4BQ<br>United Kingdom<br><br>Plaintiff,<br><br>vs.<br><br>MAX & MIA REALTY LLC,<br>1145 Sunset Drive,<br>Orwigsburg, PA 17961<br><br>Defendant. | Civil No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, BEAZLEY UNDERWRITING, LTD. ("Beazley"), by and through its undersigned counsel, Fields Howell LLP, hereby files this Complaint for Declaratory Judgment against Defendant, MAX & MIA REALTY LLC ("MMR"), and states as follows:

## I.    NATURE OF THE ACTION

1.    This insurance coverage declaratory judgment action arises out of MMR's insurance claim for property damage to its building located at 1020 Chestnut Road, Orwigsburg, Pennsylvania  (the "Property") sustained from a fire on March 5, 2022.

2.    Specifically, this action arises out of a dispute regarding the scheduled limit of liability for a 43,000 square foot building, also known as Location No. 1, Building No. 1, located at the Property (the "Building").

3.    The dispute relates to coverage under property insurance Policy No. W25073D210501, issued to MMR and subscribed to by Beazley for the period of October 11,

2021 to October 11, 2022 (the "Policy"), which provided scheduled coverage for certain buildings located across four properties subject to the Policy's terms, conditions, limitations, and exclusions. A copy of the Policy is attached hereto as **Exhibit A.**

4.    Beazley agreed to pay $3,413,330, which is the scheduled limit of liability for property damages to the Building, in addition to, $108,479.96 for MMR's loss of Business Personal Property, and $240,000 for twelve months of lost rental income (Time Element Loss), in accordance with the statement of values for the Building and the Scheduled Limit of Liability Clause under the Policy.

5.    Beazley seeks a judicial determination pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that the Policy provides scheduled coverage and that MMR's loss is limited to the scheduled limits of liability for the Building.

## II.    JURISDICTION AND VENUE

6.    This is an action for Declaratory Judgment pursuant to 28 U.S.C. 2201 and Fed. R. Civ. P. 57.

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201, as complete diversity of citizenship exists between the parties, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and Beazley seeks declaratory relief pursuant to 28 U.S.C. §2201, *et seq.*, the Federal Declaratory Judgment statute.

8.    Beazley subscribed to Policy No. W25073D210501 and has more than $75,000 at issue in this litigation and is a proper party.

9.    An actual case and controversy of a justiciable nature exists among the parties regarding the duties, rights, and obligations, if any, under the Policy.

10.     Venue is proper in this district because the Building is located in this district, and MMR's principal place of business is in this district.

## III.    THE PARTIES

11.     Beazley is a United Kingdom corporation and is a citizen and resident of the United Kingdom.  Beazley was incorporated and formed under the laws of England and Wales, with its principal place of business at 22 Bishops Gate, London, United Kingdom EC2N 4BQ.

12.     MMR is a limited liability company organized under the laws of the State of Pennsylvania.  Upon information and belief, MMR's principal place of business is in Orwigsburg, Pennsylvania.  Upon information and belief, the members of MMR are citizens of Pennsylvania and are not citizens of the United Kingdom or any foreign country.

## IV.    FACTUAL BACKGROUND

### A.     THE POLICY

13.     MMR is the named insured under the Policy.  (Exhibit A).  MMR submitted a schedule of values to Beazley for the purpose of obtaining insurance.

14.     On September 9, 2021, Beazley sent a renewal quote, which included a copy of the proposed insurance policy (the "Quote Policy") to MMR's agent for the Policy, RT Specialty.

15.     The Quote Policy contained Form FS C 590 03 21, which provided the following:

**A SCHEDULED POLICY**

This Policy is based on a Statement of Values for each scheduled location.

16.     The Quote Policy also contained the Scheduled Limit of Liability Clause.

17.     After receiving the quote and Quote Policy, MMR placed an order for the quoted insurance.

18.     On October 11, 2021, Beazley sent an email to MMR's agent for the Policy, RT Specialty, confirming MMR's order for the insurance and attached a copy of the Schedule of Values, the General Cover Binder, and the invoice. A copy of this email is attached as **Exhibit B.**

19.     In the email, Beazley instructed MMR to "review [the Binder] carefully as it details the coverage provided by the company to the insured" and to "[p]lease contact us if you have any questions or if we can be of any assistance."  (Exhibit B).

20.     Additionally, the email expressly provided: "This binder is issued and coverage is bound based on the attached schedule of locations and values which has been accepted by the Underwriter. *Coverage does not apply to locations or for coverages unless a specific value is shown in this schedule, which has been provided by the Named Insured.*" (emphasis added). (Exhibit B).

21.     The Binder contained a list of "Forms and Endorsements Effective at Inception," which included, among others, the "A Scheduled Policy" Form and the "Scheduled Limit of Liability Clause."

22.     Prior to the fire, on November 4, 2021, Beazley provided a copy of the Policy and Schedule of Values to MMR's agent for the Policy, RT Specialty.

23.     The cover email to MMR's agent explicitly stated, "This policy is issued and coverage is bound based on the attached schedule of locations and values which has been accepted by the Underwriter. *Coverage does not apply to locations or for coverages unless a specific value is shown in this schedule, which has been provided by the Named Insured.*" (emphasis added).  A copy of this email is attached hereto as **Exhibit C.**

24.     The Policy contains Form FS C 590 03 21, which provides the following:

**A SCHEDULED POLICY**

This Policy is based on a Statement of Values for each scheduled location.

(Exhibit A, p.1, Form FS C 590 03 21).

25.     According to the Supplemental Declarations, the Policy provides coverage for certain locations "As per Schedule on File with the Underwriter." (Exhibit A, p. 10, Supplemental Declarations Page).  A copy of the Statement of Values ("SOV") is attached hereto as **Exhibit D**.

26.     The Policy's Supplemental Declarations Page also states, "Insurance at the Described Premises applies only for Coverages for which a Limit of Insurance is shown." (*Id.*).

27.     The Described Premises are the premises listed in the SOV.  (Exhibit D).

28.     The Building is listed in the SOV and described as Location "1-1" with a listed value for the "building" in the amount of "$3,413,330" and "BPP" (business personal property) in the amount of "$440,740". (Exhibit D).

29.     In addition to the language in the Policy Declarations quoted above, the Policy's applicable coverage form, the Building and Personal Property Coverage Form, provides, in relevant part:

**A.     Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

    **1.     Covered Property**

    Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2., Property Not Covered, *if a Limit of Insurance is shown in the Declarations* for that type of property.

        **a.     Building**, meaning the building or structure described in the Declarations . . . .

(Exhibit A, Form CP 00 10 04 02 (Building and Personal Property Coverage Form), p. 1 of 14 (emphasis added)).

30.     Based on this language, read in conjunction with the Declarations, which provides coverage is as per the SOV, there can be no coverage for the Building above and beyond the limit of liability set forth in the SOV.

31.     Likewise, the Policy contains a "Scheduled Limit of Liability Clause" endorsement, which provides, in relevant part:

> It is hereby understood and agreed that the following Special Terms and Conditions apply to this policy:
>
> *     *     *
>
> (2)     The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the event of loss hereunder, and subject to any Co-Insurance provisions if stated within this Policy, the liability of the Company shall be limited to *the least of* the following for each individual loss:
>
> A.     The actual adjustment amount for each individual loss; or
>
> B.     *100% of the individually stated value for each scheduled item of property, time element or other coverages at the location which had the loss as shown on the latest Statement of Values on file with the Company*; or.
>
> C.     The Limit of Liability or Amount of Insurance shown on the Supplemental Declarations Page of this Policy or endorsed onto this policy less applicable deductible(s).

(Exhibit A, Form FS C 468 03 21, Scheduled Limit of Liability Clause (emphasis added)).

32.     Under the Scheduled Limit of Liability Clause, if the actual adjustment amount of the loss exceeds the total stated value in the SOV, Beazley's liability is limited to the amount listed on the SOV for the Building (i.e., $3,413,330).

33.     The Policy also provides certain coverage for loss of rental income caused by a covered direct physical loss or damage to the Building.

34.     Under the Policy's Supplemental Declarations, rental income losses are not subject to the Scheduled Limit of Liability Clause: "FS C 468: Limit of Liability Clause, Item (2)B is

deleted in respects to Business Income and Rental Income." (Exhibit A, Supplemental Declarations Page).

35.     The Policy also contained a "DEBRIS REMOVAL ENDORSEMENT." (Exhibit A, Endorsement NMA2340).

36.     The Debris Removal Endorsement provides:

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1.  In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the Sum Insured, *subject to the limitations* and method of calculation below, *and to all the other terms and conditions of the Policy*, costs or expenses;

    a)  which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

    b)  of which the Assured becomes aware and advises the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction

(Emphasis added).

37.     By the express terms of the Policy, the cost of debris removal is subject to the terms of the Policy, including Scheduled Limit of Liability for the Building.  Debris removal is not Business Income or Rental Income, and thus, 2(B) applies to limit coverage to the scheduled amount.

**B.      THE INSURANCE CLAIM**

38.     During the early morning hours on March 5, 2022, a fire erupted in the confines of the Building and spread throughout the entire structure.

7

39.     The Building, also referred to in the Policy as Location 1, Building 1 or Location 1-1, is a 43,000 square foot, steel-constructed building.

40.     The rear of the Building is a warehouse that is approximately 36,250 square feet and occupied by MMR's tenant, Clearly Clean Products, a manufacturer of plastic products for supermarkets, such as storage trays and custom films.

41.     According to the Insured, Clearly Clean Products leases the warehouse space from MMR for $10,000 per month.

42.     The front of the Building contains two levels totaling approximately 6,750 square feet of office space that is occupied by MMR's tenant, Heim Construction Company, Inc.

43.     According to MMR, Heim Construction Company, Inc. leases the office space from MMR for $10,000 per month.

44.     According to MMR, its business personal property covered was located in the office space area of the Building.

45.     MMR claims that the damages to the Building are approximately $5,103,579.96.

46.     To date, MMR claims that the business personal property loss is approximately $108,479.96, which is based, in part, on a representation from MMR that it has spent $100,000 to replace damaged furnishings.

47.     To date, MMR has not submitted an inventory for the business personal property losses as requested by the independent adjuster and as required by the Policy.

48.     To date, MMR's claim for lost rental income is approximately $100,000 based on five (5) months of lost rent at a rate of $20,000 per month.

49.     In or around May 16, 2022, Beazley provided MMR with a statement of loss which provides for the following payments under the Policy: (1) $3,413,330 for the loss to the Building,

which is the scheduled limit of liability under the SOV; (2) $8,479.96 for business personal property, which represents the full value for items claimed by MMR; and (3) $60,000 for loss of rents for the three month period between March and May.

50.     To date, MMR has not provided a sworn proof of loss for payment under the Policy.

51.     MMR disputes the scheduled limit of liability for damage to the building and demands that Beazley issue payment for the total cost to rebuild the Building.

52.     In a showing of good faith, on August 4, 2022, Beazley offered to forego the Policy's requirement for a sworn proof of loss, without waiving its rights to demand one in the future if any additional payments come due, in an attempt to issue payments under the Policy.

53.     Beazley advised that it would issue payment to MMR in the amount of $3,761,809.96, which represents the following payments under the Policy: (1) $3,413,330 for damage to the Building; (2) $108,479.96 for business personal property identified to date; and (3) $240,000, which represents lost rents between May through July, plus an advance for the next seven months – based on the projected period of restoration.

54.     Beazley also agreed to forego the requirement that MMR sign the proof of loss, without waiving its rights in the future to demand it, in an attempt to issue payments under the Policy.

**COUNT I**

**CLAIM FOR DECLARATORY RELIEF**

55.     Beazley incorporates by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

56.     The Policy is a scheduled insurance policy covering multiple buildings and properties.

57.     The Policy provided MMR with insurance coverage for covered losses to the Building subject to a Scheduled Limit of Liability set forth in the SOV.

58.     The SOV provides that the limit of liability for the Building is $3,413,330.

59.     The SOV provides that the limit of liability for the business personal property is $440,740.

60.     The most that MMR can recover for damage to the Building is $3,413,330, inclusive of debris removal.

61.     The most that MMR can recover for damage to business personal property is $440,740.

WHEREFORE, Plaintiff, Beazley Underwriting, Ltd., demands judgment in its favor and against Defendant, Max & Mia Realty, LLC, pursuant to 28 U.S.C. §2201, declaring that:

a.     The Policy is subject to a Scheduled Limit of Liability which applies to coverage for the Building;

b.     Under the Policy, the scheduled limit of liability for property damage is $3,413,330, inclusive of debris removal, and business personal property for the Building is $440,740.

c.     Beazley is not required to provide coverage for property damage and loss of business personal property in excess of the individually scheduled limits for property damage and business personal property; and

d.     Awarding such other and further relief as the Court may deem just and proper.

Dated: September 8, 2022

FIELDS HOWELL, LLP

Robert L. Lakind
Christopher S. Myles
301 S. State Street, Suite N200
Newtown, Pennsylvania 18940
267-214-7737
rlakind@fieldshowell.com
cmyles@fieldshowell.com
*Attorneys for Plaintiff, Beazley Underwriting, Ltd.*